STATE OF IOWA v. FRANK KOWOLSKI AND JOHN ARDUSER, Appellants.

**Highways:** STEAM ENGINES. Acts Twenty-fourth General Assembly chapter 68, provide that a person in charge of an engine propelled along the highway by steam must stop it when within one hundred yards of teams traveling on the highway, until the teams pass; also that a man shall be kept in front to assist in controlling passing horses. *Held:*

   a. An indictment is not bad for duplicity because it charges a failure to stop and to keep a man in front.

   b. The statute requires the stop whether the teams are meeting the engine or being driven in the same direction in which the engine is going.

   c. It is no defense that a man was kept on the look-out in a manner differing from the statutory requirements though the method adopted may have been an equally effective safeguard.

   d. It is no defense that no stop was made in order to avoid the sinking of the engine in the road, when this danger was due to the fact that an attempt was made to avoid crossing a culvert in the manner prescribed by law.

**Instruction:** CONSTRUED. A charge that an omission to stop is not justified unless to stop was dangerous to life and limb, is equivalent to stating that the failure was excusable if circumstances would lead an ordinarily prudent man to believe it would be dangerous to stop. See note to *Com. v. Allen* (Pa.) 16 L. R. A. 148.

*Appeal from Delaware District Court.*—HON. J. J. TOLLERTON, Judge.

THURSDAY, DECEMBER 12, 1895.

Indictment for propelling a steam engine on the highway without having a competent man in front, and in not stopping said engine as by law required. Verdict of guilty and judgment thereon. The defendants appealed.—*Affirmed.*

*Welch & Welch* for appellants.

*Milton Remley,* attorney general, and *Jesse A. Miller* for the state.

Granger, J.—The following is the charging part of the indictment: "For said defendants did, on or about September 3, 1894, in South Fork township, said county, drive or cause to be driven, a steam engine, being propelled by steam, on and over the public highway, and did not have a competent man in front of said engine, to assist persons passing the same to control their horses or animals, and did not stop said engine when one hundred yards distant from persons going on said highway with horses or other animals, until the same had passed, and failed to render any assistance to any one passing on the public highway, contrary to the statute," etc. The cause of the complaint, as shown by the evidence, is that, while defendants were moving their engine and thresher along the highway, the thresher being about one hundred feet behind the engine, a Mrs. Williamson, with her little girl, and another lady, driving a horse, came up and passed the thresher, and as they approached the engine it turned out of the track, as they supposed to let them pass, and as they were opposite the engine the horse took fright and ran away. The indictment is founded on the following provisions of chapter 68, Acts of the Twenty-fourth General Assembly: "That it shall be the duty of persons in charge of any steam engine, being propelled upon the highways of this state, wholly, or in part by steam power, to stop said engine whenever it is one hundred yards distant from any person or persons going on said highway with horses or other animals, until said horses or other animals shall have passed, and sooner, in case said horses or

other animals become frightened before arriving at said distance. The owner or driver of said engine shall also keep a competent man not less than fifty nor more than one hundred yards in front of said engine, to assist in controlling any horses or other animals being driven or used on said highway, until said horses or other animals shall have passed by said engine, and it shall be the duty of said man to use all reasonable care and diligence to prevent the occurrence of any accidents which might result in case said horses or other animals become frightened at said steam engine. * * * Any owner of a steam engine, who by himself, agent or employe shall violate any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof, for each offense shall be fined," etc.

I. We will have disposed of the most important branch of this case by considering a claim of appellants that there can be no conviction for the reason that the statute requiring the engine to be stopped, and a competent man to be kept in front of the engine, has no application to a case where persons with horses are approaching the engine from the rear. The claim is based on such thoughts as that it could not have been contemplated that an engine should be stopped when horses approaching from the rear were one hundred yards distant, because it could not be assumed that they would attempt to pass; also, that where teams were traveling in the same direction and ahead of the engine, because it would not be assumed that the engine would overtake and pass the team, but it is said to apply to cases in which persons with teams are traveling in the opposite direction, so as to meet the engine, for then the purpose of having the man in front, and of stopping the engine, is manifest. It is said that the man in front could not be of use to a team approaching from the rear, and many plausible

thoughts are suggested to support appellant's conten-
tion. It will be well to first look to the evil that the
statute was designed to correct. The steam engine, on
the public highway, when the act in question was
passed, was of recent date. Its unusual appearance,
and the noise incident to its locomotion, made its
movements on the highway dangerous to persons trav-
eling with teams, and the legislative purpose was to
prevent accidents likely to occur without such legis-
lation. While it might be said that persons traveling
in the opposite direction would more necessarily come
in contact with such an engine than those going in the
same direction, either in front or rear, it is not to be
correctly said that the latter is not liable for such
contact, for it is a matter of common observation
that teams going on the highway, in the same direc-
tion, pass and repass as the purpose or pleasure of the
persons in charge may require. We have no reason for
assuming that a different custom, either from choice
or necessity, obtains as to teams and the engine. The
facts that control the speed of teams on the highway
are so varied that uniformity in that respect is not
contemplated, and nothing in the law seems designed
to place restrictions thereon. We are not prepared to
say that the legislature had in view security for per-
sons or teams traveling in any particular direction,
but rather that it designed the law to operate favor-
ably as to all. It may be necessary for a team in the
rear of an engine to pass it, and it may also be neces-
sary for an engine to pass a team going in the same
direction. These necessities may arise from many
causes, and we think the law was designed to operate
in all such cases. It is true that, if an engine is to
pass a team, it cannot do so if standing; but whether
or not it should stop, and by the aid of the man in
advance, take steps for the safety of the team, we need
not determine. The question is not before us. The

law should not be too literally construed. It will not bear the construction that the man required to be in advance shall at all times be there. The requirement that he shall assist in controlling animals until they have passed the engine clearly indicates his duty on the approach of teams, and we think it immaterial from which way the team approaches. If the engine stops because of a team to pass from the rear, he is not required to remain in front, but to use reasonable diligence to prevent the occurrence of accidents, just as he would if the team approached from the front. The law requires the engine to be stopped "whenever it is one hundred yards distant from any person or persons going on said highway with horses or other animals." This language, in itself, is as applicable to persons going one way as the other. The fact that teams going in the opposite direction are more likely to pass the engine probably led to the provision that the man should be in advance; but nothing in the language fixing his location when not assisting with teams should be construed to the prejudice of teams actually passing or to pass, and needing such assistance. The object of the statute was to make safe the passing of teams. It was intended that the man in advance should be on the lookout, and the more available position was thought to be in front. His position when no team or animal requires his assistance in passing is as fixed by the statute. When a team is discovered, the purpose of the statute as to the place where he shall be is answered, and a duty follows that has no reference to the place from which he is to observe the approach of teams, and his place then is wherever it is necessary to render the assistance. Our conclusion is that, as to all teams that are to pass the engine, the law as to the stopping of the engine and the keeping of a man in front is alike applicable. If, with the precautions provided by the law, a team coming from

either direction cannot be discovered, so as to stop the engine, another question might be presented. But the duty of keeping the man on the lookout is imperative, and its disregard is a violation of the law.

II. The defendant Kowolski was a witness, and after stating that he turned aside with the engine to avoid a culvert in the highway, and that he was crossing the lowest place, where the water runs, when the buggy passed, he said: "I did stop, but as soon as I stopped it was soft, and the side where it was soft kept going down. The engine was sinking or giving way. Then I started up and pulled out." He was then asked, "Could you have stopped there, in your judgment?" The court excluded the question as leading. Without a further question, the witness then said, "It settled on one side more than on the other." He was then asked, "State what effect, if any, that the settling would have on the engine." The question was excluded as leading. The latter question is far from leading, and the first is not objectionably so. But there is no prejudice, for it conclusively appears that the engine was stopped, and then started because it was sinking. The purpose of the witness was to show that it could not be stopped, because, if stopped, it would sink into the mud. It appears that the engine was turned aside to this wet place to go around a culvert. The law makes a specific provision as to crossing culverts with such engines, and it seems that the defendant left the traveled track, and sought to pass the culvert through this wet place. We do not think the defendant could excuse a failure to observe the requirements of the law in that way, even if such danger could, in any event, be a valid excuse.

III. The court refused to permit the defendants to show by evidence that a Mr. Shane was kept on the

lookout, but in a different way from that prescribed by law. In this the court was right. The law fixes the conditions on which these engines may be propelled on the highway. Even though another way may be, in practice, just as good, still it is not a conformity with the law, and will not invoke its protection.

IV. The court said to the jury that a person operating such an engine on the highway must stop it for the passage of teams passing either way, unless to stop would be dangerous to life or limb. Appellant's criticism of the instruction is that it should have stated that, if the circumstances were such as to lead an ordinarily careful and prudent man to believe that it would be dangerous to life or limb, it should excuse the failure to stop. It will be noticed that the instruction does not hold to a rule that, to excuse a failure to stop, the circumstances must be such that to stop would actually result in a loss of life or limb, but only that there must be danger of such a result. We think this means only that the situation must be such that such a result would reasonably be apprehended. It cannot well be said but that one may be in danger of being injured, without actual injury. We think the criticism is without merit, and we may say it is doubtful if the legal effect of the language suggested by appellants would be different from that given.

V. It will be seen that the information charges the offense as having been committed by a failure to have a man in front of the engine, and also in failing to stop. Because of this it is said that the information is bad for duplicity,—that it charges two offenses. The information is laid under section 1 of the act above quoted. Section 4 provides: "Any owner of a steam engine who by himself, agent or employe shall violate any of the provisions

of this act shall be deemed guilty of a misdemeanor,"
etc. Section 2 provides how bridges and culverts shall
be crossed. Section 3 provides that the whistle shall
not be blown on the highway. We understand the word
"provisions," as used in the fourth section, to refer to
the different sections,—the first providing how the
engine shall be operated along the highway, the
second how bridges and highways may be crossed, and
the third that the whistle shall not be blown. Now,
the provision as to how the engine must be operated
on the highway may be violated in either or both of
the ways specified; but, if the failure to post the man
and stop the engine are simultaneous, they relate to
the one act of operating the engine, and although
either neglect would make the offense complete, they
are only different ways of committing the same
offense. The case of *State v. Meyers*, 10 Iowa, 448,
fully sustains this view. Of the information in this
case it may be said, as of the indictment in that case,
that it "described only one offense in fact, the guilt of
which might be incurred in either method specified."
Some other questions have been referred to in argu-
ment, but our considerations are conclusive of all, and
the judgment is *affirmed.*